CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

February 12, 2014

LETTER TO COUNSEL:

RE: *William Lee Laird v. Commissioner, Social Security Administration*;
Civil No. SAG-13-1182

Dear Counsel:

On April 22, 2013, the Plaintiff, William Lee Laird, petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 14, 16). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Mr. Laird filed his claim for Disability Insurance Benefits on September 3, 2010, alleging disability beginning on January 1, 2008.[1] (Tr. 180-83). His claim was denied initially on December 2, 2010, and upon reconsideration on March 23, 2011. (Tr. 133-36, 140-41). A hearing was held on March 29, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 28-51). Following the hearing, the ALJ determined that Mr. Laird was not disabled during the relevant time frame. (Tr. 11-27). The Appeals Council denied Mr. Laird's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Laird suffered from the severe impairments of coronary artery disease and depression. (Tr. 16). Despite these impairments, the ALJ determined that Mr. Laird retained the residual functional capacity ("RFC") to:

> perform a range of medium work as defined in 20 CFR 404.1567(c) in that he can lift and carry fifty pounds occasionally, twenty-five pounds frequently. He can stand six hours and sit for two hours in an eight-hour workday with normal breaks. He must avoid hazardous machinery and dangerous heights. He should be allowed work that is simple, routine and unskilled requiring low stress, low concentration, and low memory with one or two step tasks and no production rate. Additionally, the claimant should be afforded work, which requires little interaction with the public, co-workers or supervisors.

---

[1] Mr. Laird had filed a previous application for benefits, which also was denied. (Tr. 118-32). His appeal of that earlier denial to this Court was unsuccessful. *See Laird v. Astrue,* Civil No. SAG-11-2043, 2012 WL 2847592 (D. Md. July 10, 2012).

(Tr. 18). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Laird could perform jobs that exist in significant numbers in the national economy, and that he was therefore not disabled during the relevant time frame. (Tr. 22-23).

Mr. Laird presents several arguments on appeal. First, he argues that the ALJ failed to give sufficient weight to the opinions of his treating physician, Dr. Etherton. Second, he argues that the ALJ failed to discuss the VE's testimony in response to a question propounded by his attorney on cross-examination. Each argument lacks merit, and is addressed in turn.

Mr. Laird contends that the ALJ failed to appropriately weigh the opinions of his treating physician, Dr. Etherton. Pl.'s Mot. 7-8. A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig*, 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F.Supp.2d 601, 608 (W.D.N.C. 2001)). There are two opinions from Dr. Etherton in the record: an opinion from November, 2008, and an opinion from 2012. (Tr. 246-50, 440). The earlier opinion contains more specific information about work-related functions, while the later "opinion" is only a statement of Mr. Laird's New York Heart Association Functional Classification. *Id.* It is worth noting that Mr. Laird's therapeutic classification, according to Dr. Etherton, actually improved between 2008 and 2012, rendering him capable of performing more strenuous activity. *Id.* Given the lack of any evidence of cardiac symptoms after 2010, Dr. Etherton's 2012 classifications lack any obvious evidentiary basis.

Although the discussion was not extensive, the ALJ assigned "no weight" to Dr. Etherton's opinions. (Tr. 20-21). The ALJ reasoned that "the claimant's treatment records fails [sic] to demonstrate the level of limitations that he proclaims and [the opinion] appears to [be] based solely on the subjective reports from the claimant." *Id.* Earlier in the opinion, the ALJ summarized in detail the treatment records he found to be inconsistent, including records pre-dating both reports from Dr. Etherton. (Tr. 19-20). As a whole, then, the ALJ provided sufficient reasoning in the opinion for me to ascertain that his conclusion was based on substantial evidence.[2]

---

[2] Some of those inconsistent records were summarized at some length in my July 10, 2012 opinion, as follows:

> As the ALJ noted, Dr. Etherton's findings are not supported by any of his own observations. (Tr. 25-26). Although Dr. Etherton noted Mr. Laird had "severe coronary artery disease," he did not indicate specific medical findings to support that assessment. On January 23, 2008, Dr. Etherton noted that Laird "has done very well" since his last appointment and was not suffering from any chest pain, palpitations, or dizziness. (Tr. 345). This report also found that Mr. Laird "remains very active" and stated that he was "working a new job, reprocessing scrap metal." *Id.* Six months later, Dr. Etherton found that Mr. Laird had "no recent chest pains, chest pressure, shortness of breath, palpitations, dizziness, or loss of consciousness." (Tr. 344). These reports do not suggest that Mr. Laird was unable to perform simple basic tasks. In fact, Dr. Etherton "encouraged him to try to remain as active as possible" despite his cardiovascular issues. (Tr. 344). Yet, on

Mr. Laird's final argument is that the ALJ's hypothetical to the VE did not include all of his limitations, and that the ALJ did not address the testimony adduced by his counsel on cross-examination. Pl.'s Mot. 6. However, the ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler,* 807 F.2d 771, 774 (9th Cir. 1986)). The

---

November 25, 2008, Dr. Etherton's notes indicate Laird faced more substantial difficulty. He stated Mr. Laird "continues to have intermittent chest pains," and can do "minimal activity" with his symptoms. (Tr. at 389). Dr. Etherton also stated Mr. Laird was "unable to complete even mild or moderate tasks." *Id.* This conclusion is far more drastic than the prior evaluations. However, despite the apparent dramatic worsening in activity level, Dr. Etherton ordered no new tests and recommended a regular six-month follow up. *Id.* On September 1, 2009, Dr. Etherton noted that Mr. Laird had intermittent episodes of chest pain and shortness of breath, and that he fatigued easily. (Tr. 390).

The ALJ found that there were no objective findings to substantiate Dr. Etherton's opinion that Mr. Laird's condition had deteriorated so dramatically between July, 2008 and November, 2008. The ALJ noted that, during the relevant time period, Mr. Laird did not visit a hospital complaining of chest pains or cardiac distress. (Tr. 25). The ALJ also noted that Mr. Laird had not undergone any recent intensive cardiovascular analysis, and that his last test in May, 2007 indicated only mild reversible ischemia. (Tr. 237).

The ALJ found that Dr. Huddleston's August 12, 2008 report recommending Mr. Laird for a commercial driver's license was inconsistent with Dr. Etherton's diagnosis of heart disease involving marked limitations in functioning. (Tr. 25). In his report, Dr. Huddleston answered "no" to almost every portion of the health history section, including the portions that asked if the applicant had "any illness or injuries in the past five years" or "shortness of breath" or "nervous or psychiatric disorders, e.g. severe depression." (Tr. 353). Dr. Huddleston did note that Mr. Laird had experienced "heart disease" or "heart attack" and "heart surgery." *Id.*

Dr. Etherton's restrictive findings were also contradicted by Mr. Laird's own testimony. In both of his functional disability reports, and at his hearing on November 9, 2009, Mr. Laird attested to his ability to complete basic tasks, such as dressing, bathing and feeding himself. (Tr. 50, 178, 197). In his functional reports, Mr. Laird stated that he fed and walked his dogs, watched television, made himself sandwiches, walked, drove a car, and went shopping for groceries. (Tr. 179-82, 198-201). He also stated that he left the house to attend church and sporting events. (Tr. 182, 201). At the hearing, Mr. Laird testified that he has no problem sitting, can lift about ten pounds, can vacuum, can wash dishes by hand, and can attend and sit through church services. (Tr. 58-62). All of these activities contradict Dr. Etherton's opinion that Mr. Laird could lift zero pounds, could not stand or walk for any hours in a day, could not sit for any hours in a day, could never perform postural activities, and had severe restrictions on physical functions and environmental restrictions. (Tr. 379-82). Although Mr. Laird's own descriptions of his activities in his report and testimony indicate some limitations on his ability to function, they are significantly less restricted than Dr. Etherton's opinion.

ALJ's hypothetical was largely based on the RFC, which included limitations that accommodated Mr. Laird's physical and mental disorders. *See* (Tr. 48-49). Moreover, as addressed above, the ALJ provided substantial evidence explaining his rejection of the extreme limitations proposed by Dr. Etherton, which also validates the ALJ's decision not to credit the VE testimony premised on those same limitations. Finally, Mr. Laird alleges that the ALJ's decision omitted VE testimony that was favorable to him, especially the VE's response that there were "very few" jobs available to a person with his precise limitations. (Tr. 48-49). However, the number of local jobs available in the representative positions cited — 2,500 — establishes a "significant number" to justify a finding of "not disabled." *Cf. Lawler v. Astrue*, No. 09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that the fact that there were only 75-100 jobs in the region where plaintiff lives "does not undermine the ALJ's conclusion that plaintiff is capable of performing work that exists in significant numbers in the national economy."); *Hicks v. Califano*, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number). Remand is therefore unwarranted.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 14) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 16) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge